IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF UTAH

| | |
|---|---|
| PAULA A. MITCHELL,<br><br>        Plaintiff,<br>v.<br><br>THE BANK OF NEW YORK MELLON; a New York Chartered Bank; BRAD DeHAAN; an individual; HILLARY McCORMACK, an individual; BRIGHAM LUNDBERG, an individual; LUNDBERG & ASSOCS, PC; a Utah Professional Corporation; NuVENTURE GROUP, LLC, a Utah Limited Liability Company; STATUTORY BENEFICIARY DOES, 1-1000; REPURCHASING DOE; and DOES 1001-2000<br><br>        Defendants. | MEMORANDUM DECISION AND ORDER GRANTING MOTIONS TO DISMISS<br><br><br><br><br><br>Case No.:   2:18-cv-00636<br><br> Judge: Clark Waddoups |

Currently before the court are four Motions: (1) the Lundberg Defendants' Motion to Dismiss, (ECF No. 10); (2) the Bank of New York Mellon's (the Bank) Motion to Dismiss (ECF No. 27); (3) Paula Mitchell's (Ms. Mitchell) Motion to Dismiss the Bank's Counterclaims, (ECF No. 29); and (4) NuVenture Group LLC's Motion for Certification, (ECF No. 41). As explained below, the court GRANTS both Defendants' Motions to Dismiss (ECF Nos. 10 & 27). The court dismisses NuVenture's Crossclaim for failing to adequately plead diversity jurisdiction. This MOOTS Nuventure's Motion, (ECF No. 41). The court dismisses the Bank's Counterclaim under the *Colorado River* doctrine. This MOOTS Ms. Mitchell's Motion to Dismiss, (ECF No. 29).

Background

Ms. Mitchell is the current occupant of real property located at 3 Mistywood Lane, Sandy, Salt Lake County, Utah. (*See* Compl. ¶ 1, ECF No. 2 at 1.) Ms. Mitchell "acquired an ownership interest in the Property by a Special Warranty Deed executed on May 23, 2006, and recorded on

1

May 24, 2006, in the Salt Lake County Recorder's Office . . . ." (ECF No. 10-1 at 3.) "On May 23, 2006," Ms. Mitchell "as trustor, executed and delivered a certain trust deed . . . to Stewart T. Matheson, as trustee, for the benefit of Mortgage Electronic Registration Systems, Inc., as nominee for America's Wholesale Lender, its successors, and assigns, to secure obligations under a certain promissory note executed in conjunction therewith." (ECF No. 10-1 at 3.) "[T]he Mitchell Trust Deed was recorded in the Salt Lake County Recorder's Office . . . ." (ECF No. 10-1 at 3.) "On May 23, 2006, in conjunction with the execution of the Mitchell Trust Deed," Ms. Mitchell "executed a promissory note . . . with a mortgage rider . . . in the amount of $1,000,000.00." (ECF No. 10-1 at 3.)

"The Note obligated" Ms. Mitchell "to make monthly principal and interest payments . . . beginning July 1, 2006." (ECF No. 27-15 at 5.) Ms. Mitchell's "obligations under the Note, Rider, and Mitchell Trust Deed were secured by the Property." (ECF No. 27-15 at 5.) Ms. Mitchell "breached the terms and conditions of the Note, Rider, and Mitchell Trust Deed by failing to make the required monthly payments when due." (ECF No. 27-15 at 5.) "Based upon" Ms. Mitchell's "failure to pay the monthly payments under the terms of the Note, Rider, and Mitchell Trust Deed," Ms. Mitchell was in default. (ECF No. 27-15 at 5.)

A Notice of Default was entered "on or about August 17, 2010." (ECF No. 27-1 at 7.) On January 18, 2011, Ms. Mitchell filed a Complaint in the Third Judicial District Court, County of Salt Lake, State of Utah, seeking, among other things, for the state court to declare that the Bank of New York Mellon "lack[s] any interest in the subject property which might permit them to foreclose, or attempt to foreclose the property through non-judicial means, and that their activities are void *ab initio* . . . ." (ECF No. 27-1 at 28.) On March 13, 2012, the state court dismissed nine of Ms. Mitchell's eleven causes of action. (ECF No. 27-2 at 8.) On September 19,

2013 the state court dismissed Ms. Mitchell's remaining causes of action. (ECF No. 27-3 at 14.)

Ms. Mitchell later filed a Motion, "requesting that the [state] Court correct its misstatements to the effect that all of the claims have been resolved so as to avoid any confusion as to whether there is a final judgment, and any possible confusion over questions of appeal." (ECF No. 27-5 at 8.) On February 28, 2014 the state court denied Ms. Mitchell's Motion, providing, in relevant part:

> Even if the Court were to consider Plaintiffs' argument, the Court would not be persuaded to reconsider its earlier rulings. The Court's three prior rulings, taken together, dismissed all claims against all defendants. Plaintiffs have failed to identify a single claim that was not disposed of by the earlier rulings. Rather, Plaintiffs have merely repackaged arguments that have already been considered and rejected by the Court. The Court sees no reason to reconsider its earlier rulings or to correct any "misstatements as to the status of the case."

(ECF No. 27-6 at 4.)

Ms. Mitchell then filed an appeal but later filed a Motion to Dismiss that Appeal for Lack of Jurisdiction. (*See* ECF No. 27-7 at 3 ("Mitchells have been placed in the unfortunate dilemma of being forced to seek an appeal only to argue that the appeal is premature and must be dismissed because the trial court has not entered a final judgment.").) On January 14, 2015, the Utah Court of Appeals entered an Order denying Ms. Mitchell's "motion to dismiss [her] own appeal," finding that the "district court has resolved all causes of action raised in the litigation." (ECF No. 27-8 at 2.)

On April 18, 2016, the Utah Court of Appeals issued an opinion affirming the district court's judgment. *Mitchell v. ReconTrust Co. NA*, 373 P.3d 189, 206 (Utah Ct. App. 2016) ("The Mitchells have not demonstrated that the district court erred in dismissing several of their causes of action upon Bank Defendants' motion to dismiss. The Mitchells have also failed to show that the district court erred in its evidentiary rulings or in granting summary judgment to the

defendants on their remaining claims. Accordingly, we affirm.").

On June 10, 2016, Ms. Mitchell filed a Petition for Rehearing. (ECF No. 27-9.) This Petition was denied. On July 29, 2016, Ms. Mitchell filed a Petition for Writ of Certiorari with the Utah Supreme Court. (ECF No. 27-10.) This Petition was denied on December 2, 2016. *Mitchell v. ReconTrust Co*, 387 P.3d 508 (Utah 2016).

On April 15, 2016, the Bank of New York Mellon, through the Lundberg Defendants, brought a foreclosure suit against Ms. Mitchell in the Third Judicial District Court, Salt Lake Department, Salt Like County, State of Utah. (ECF No. 27-11 at 10.) The Bank of New York Mellon sought "a judgment and order that the Mitchell Trust Deed is a good and sufficient lien upon the Property" and sought an order "that the Property be foreclosed . . . ." (ECF No. 27-11 at 8.) On March 3, 2017, Ms. Mitchell filed an Answer and First Amended Counterclaim. (*See* ECF No. 27-12 at 76.) In her counterclaim, Ms. Mitchell raised arguments regarding the "finality of *Mitchell* I." (*See* ECF No. 27-12 at 29.)

On March 30, 2017, Judge Shaughnessy entered an order dismissing Ms. Mitchell's First Amended Counterclaim, holding that almost "[a]ll of the issues and claims set forth in the First Amended Counterclaim were, or could have been asserted in the Mitchell I case . . . ." (*See* ECF No. 27-14 at 2.) Regarding those claims wherein she sought "to collaterally attack the decisions of the Utah Court of Appeals and Utah Supreme Court," Judge Shaughnessy found "no legal, factual, or logical support for [those] claims and decline[d] to entertain them . . . ." (ECF No. 27-14 at 2.)

On November 27, 2017, Judge Shaughnessy entered an Order Granting Summary Judgment for the Bank of New York Mellon. (ECF No. 27-15 at 2.) In this Order, Judge Shaughnessy held that the Bank of New York Mellon was "entitled to judicially foreclose the

Mitchell Trust Deed and sell the Property to recover any unpaid obligations owed . . . ." (ECF No. 27-15 at 7.) On that same day, Judge Shaughnessy entered a Final Judgment in favor of the Bank of Mellon "for the amount of $1,343,034.81 plus additional interest, costs, taxes, and other fees owing to Plaintiff and incurred after May 31, 2018." (ECF No. 27-16 at 4.) The Final Judgment also provided that the Bank was "entitled to judicially foreclose the Mitchell Trust Deed and sell the Property . . . ." (ECF No. 27-16 at 4.)

On November 27, 2017, Ms. Mitchell filed an "Objection to [Judge Shaughnessy's] Sua Sponte Entry of 'Final Judgment.'" (ECF No. 27-17.) On December 22, 2017, Ms. Mitchell filed a "Combined Rule 59 and Rule 52 Motions to Alter or Amend 'Final Judgment' and Request for Hearing" with the state court. (ECF No. 27-18.) On January 18, 2018, Judge Shaughnessy entered an Order denying Ms. Mitchell's Combined Rule 59 and 52 Motions. (ECF No. 27-20.) In this order, Judge Shaughnessy wrote, in part:

> The majority of Mitchell's Motion to Alter or Amend consists of re-arguing issues that have already been presented to and ruled on by the court, including on motions other than the summary judgment motion that fully resolved the issues in the case. To the extent Mitchell disagrees with the court's rulings, her remedy is to file an appeal not to serially re-argue those issues with this court.

(ECF No. 27-20 at 2.) Both Ms. Mitchell and the Bank of New York Mellon acknowledge that Ms. Mitchell appealed Judge Shaughnessy's ruling. (*See* ECF NO. 27 at 4 ("The [Rule 59 and Rule 52] motions were denied . . . and Ms. Mitchell **appealed**."); *see also* ECF No. 33 at 15 ("The reality is that Mitchell is not attempting to 'modify or set aside' the 'Final Judgment' because she **has her active appeal** to do that.") (bold added).) Ms. Mitchell filed a Notice of Appeal on February 16, 2018, "to the Utah Supreme Court of the *sua sponte* 'Final Judgment entered by Judge Shaughnessy . . . on November 27, 2017" wherein she appealed, among other things, Judge Shaughnessy's "Order Granting Summary Judgment in Plaintiff's favor" "and the

trial court's premature authorization of a foreclosure sale by the Salt Lake County Sheriff . . . ."[1]

On February 13, 2018, the Property was sold at a sheriff's sale. (*See* ECF No. 27-22 at 2 ("On the 13th of February 2018, at 12 o'clock noon of said day at the County Courthouse, Salt Lake City, Salt Lake County, State of Utah and after due legal notice I caused to be sold at public auction . . . the real property of the Bank of New York Mellon . . . .").) A sheriff's deed was executed on August 16, 2018, the by Salt Lake County Sheriff conveying to the Bank of New York Mellon "as Trustee for the Certificate Holders of the CWMBS Inc, CHL Mortgage pass Through Trust 2006-HYB5, Mortgage Pass Through Certificates, Series 2006-HYB5 party of the second part." (ECF No. 27-23 at 2.)

On August 14, 2018, Plaintiff filed, in this court, her Complaint against the Bank of New York Mellon, Brad DeHaan, Hillary McCormack, Brigham Lundberg, Lundberg and Associates, (the Lundberg Defendants) NuVenture Group, LLC, Statutory Beneficiary Does, 1-1000; Repurchasing Doe, and Does 1001-2000. (ECF No. 2.) In her Complaint, Ms. Mitchell brought thirteen causes of action:

1. "Quiet Title Action to Determine Current Owner of Property and the Validity of Any Other Claimed Interest Against the Property" (ECF No. 2 at 11.)

2. "Wrongful Foreclosure" (ECF No. 2 at 14.)

3. "Breach of Contract" (ECF No. 2 at 18.)

4. "Declaratory Judgment Invalidity of Note and Trust Deed and Any Transfer of the Debt" (ECF No. 2 at 19.)

5. "Denial of Due Process: No Final Judgment in Mitchell I" (ECF No. 2 at 20.)

6. "Denial of Due Process Re: No Res Judicata Effect of Mitchell I" (ECF No. 2 at 26.)

7. "Declaratory Judgment Re: Ownership of the Debt, Note and Trust Deed" (ECF No. 2 at 31.)

---

[1] Ms. Mitchell's Notice of Appeal is publicly available on the Utah State Court's Xchange website. The case number is 160902472. The Notice is found at Docket Entry 222.

8. "Declaratory Judgment Re: Lack of Required Notice to Cure." (ECF No. 2 at 32.)

9. "Declaratory Judgment Re: Assignment by MERS to" the Bank (ECF No. 2 at 34.)

10. "Severance of Security from Debt" (ECF No. 2 at 37.)

11. "Re: Possible Satisfaction or Reduction of Debt" (ECF No. 2 at 38.)

12. "FDCPA Violations" (ECF No. 2 at 39.)

13. "Declaratory Judgment Re: Credit Bid" (ECF No. 2 at 40.)

The fifth, sixth, and twelfth claims are federal causes of action. The rest are state-law claims.

On September 14, 2018, the Bank of New York Mellon filed a Complaint against Ms. Mitchell, Wade Mitchell, and John Doe/Jane Doe Occupant(s) in the Third Judicial District, Salt Lake Department, Salt Lake County, State of Utah. In this Complaint the Bank brought two causes of action against the Defendants—Unlawful Detainer and Ejectment.

On November 30, 2018, the Lundberg Defendants entered a Notice of Appearance in this case. (ECF No. 8.) On that same day, they filed their Motion to Dismiss. (ECF No. 10.)

On December 28, 2018, the New York Bank of Mellon filed a Notice of Appearance in this case. (ECF No. 16.) On March 12, 2019, the Bank of New York Mellon filed a Motion to Dismiss Plaintiff's Complaint under Rules 12(b)(1) and 12(b)(6). (ECF No. 27 at 1.) On that day, the Bank of New York Mellon—without filing an Answer—also filed a Counterclaim and Third-party Complaint against Plaintiff. (ECF No. 28.)

On April 16, 2019, the state court entered an order staying the state court eviction proceedings "until [this] court rules on [Ms. Mitchell's] claims in" this action. (ECF No. 29-1 at 1.) On April 17, 2019, Ms. Mitchell filed a Motion to Dismiss the New York Bank of Mellon's Counterclaims. (ECF No. 29.) On April 30, 2019, the court entered an order setting a hearing and instructing the Bank "to come prepared to discuss whether its Counterclaim and Third-Party

Complaint is permitted under the Federal Rules of Civil Procedure." (ECF No. 30 at 4.) The court provided that "Rule 14 appears to contemplate that a third-party complaint is to be filed *after* filing an original answer—not before." (ECF No. 30 at 2 (citation omitted).)

On May 3, 2019, the Bank filed an "Answer, Counterclaim, and Third-Party Complaint" providing that "on second review," the Bank's counsel "concluded the Court's doubts" about "the propriety" of the Bank's having "filed a counterclaim and third-party complaint without an answer" "were correct." (ECF No. 34 at 2.) The Bank named itself, Ms. Mitchell, and "unknown defendants residing in Utah" as the parties involved in its counterclaim and third-party complaint. (*See* ECF No. 34 at 23.) The Bank also provided:

> [i]f this Court rules it lacks jurisdiction over Ms. Mitchell's claims, then it may sever this counterclaim and third-party complaint under Rule 21. Once these claims are severed, it will have diversity jurisdiction under 28 U.S.C. § 1332 because Ms. Mitchell and (on information and belief) the unknown defendants are citizens of Utah, BoNYM is not a citizen of Utah, and the amount in controversy exceeds $75,000.

(ECF No. 34 at 23.)

On May 3, 2019, Ms. Mitchell filed a Motion arguing, among other things, that the Bank's filing of its Answer was improper. (*See* ECF No. 35.) On May 6, 2019, the court reset the May 8, 2019, hearing for May 30, 2019. (ECF No. 37.)

On May 29, 2019, the day before the hearing, NuVenture Group answered the complaint and filed a Crossclaim based on diversity jurisdiction. (ECF No. 40.)

<u>Standard of Review</u>

In their motions to dismiss, both Defendants invoke Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

<u>12(b)(1) and *Rooker-Feldman*</u>

Both Defendants argue that Ms. Mitchell's claims are barred by the *Rooker-Feldman* doctrine. (*See* ECF No. 10 at 19 ("Plaintiff's claims against the Lundberg Defendants are barred by the Rooker-Feldman doctrine." *see also* ECF No. 27 at 7 ("All or nearly all of these claims are barred by the *Rooker-Feldman* doctrine and res judicata.").) "The *Rooker–Feldman* doctrine is a jurisdictional prohibition." *Pittsburg Cty. Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 705 (10th Cir. 2004) (citation omitted) (internal quotation marks omitted).

"Because a question of subject-matter jurisdiction is implicated here," this court "pause[s] briefly to explain why the *Rooker–Feldman* doctrine [does] not provide a sound foundation for dismissal in this case." *D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1232 (10th Cir. 2013). "*Rooker–Feldman* applies only to suits filed after state proceedings are **final**." *Id.* (bold added) (citation omitted) (internal quotation marks omitted). "Having considered the record," this court "cannot say that the proceedings in Utah state court are 'final' within the meaning dictated by *Exxon Mobil*."[2] *Id.* "*Exxon Mobil* clarifies that the *Rooker–Feldman* doctrine is triggered only "after the state proceedings have ended." *Id.* As discussed above, after Judge Shaughnessy denied Ms. Mitchell's Rule 59 and Rule 52 motions, she appealed that ruling—and Judge Shaughnessy's Order Granting Summary Judgment—to the

---

[2] The Tenth Circuit has "cited with approval the First Circuit's formulation of when a state-court judgment becomes final under the *Rooker–Feldman* doctrine, as set forth post-*Exxon Mobil*:"

> (1) when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved; (2) if the state action has reached a point where neither party seeks further action; or (3) if the state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions (whether great or small) remain to be litigated.

*Osguthorpe*, 705 F.3d at 1232 n. 12 (citations omitted) (internal quotation marks omitted).

Utah Supreme Court. That appeal was assigned Docket Number 20180141 by the Utah Court of Appeals and, according to the Utah Court of Appeals' website, remains unresolved.

Ms. Mitchell filed her federal suit on August 14, 2018—while her appeal of Judge Shaughnessy's Orders were still pending. "That state-court appeal remains unresolved, and on that basis alone" this court "may conclude that the Utah state-court proceedings ha[s] not yet ended." *Id.* "Because the state-court proceedings are not final, the *Rooker–Feldman* doctrine cannot by itself bar" this court from hearing Ms. Mitchell's suit. *Id.*

12(b)(6)

Both Defendants also make arguments under Rule 12(b)(6). Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a claim when the plaintiff fails to state a claim upon which relief can be granted. The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties may present at trial but to "assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1108 (10th Cir. 1991) (citing *Scheuer v. Rhodes*, 416 U.S. 232 (1974)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff has alleged facts that allow "the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

<u>Analysis</u>

The court must satisfy itself of subject matter jurisdiction in this case. "Any federal court must, sua sponte, satisfy itself of its power to adjudicate in every case and at every stage of the proceeding, and the court is not bound by the acts or pleadings of the parties." *Harris v. Illinois-California Exp., Inc.*, 687 F.2d 1361, 1366 (10th Cir. 1982).

Ms. Mitchell alleges that this court "has diversity jurisdiction over the quiet title action . . . and the tort and contract claims against [the Bank] since [the Bank] is not a citizen of Utah, and the amounts in controversy . . . exceed the statutory threshold under 28 USC 1332." (Compl. ¶ 15, ECF No. 2 at 4.) "Since its enactment," the Supreme Court has "interpreted the diversity statute to require 'complete diversity' of citizenship." *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187, 110 S. Ct. 1015, 1017, 108 L. Ed. 2d 157 (1990). In her Complaint, Ms. Mitchell alleges that she "is an individual having her primary residence" in Salt Lake County, Utah. The court recognizes that domicile and residence are not necessarily synonymous for purposes of determining citizenship. But by arguing that diversity citizenship exists because the Bank "is not a citizen of Utah," Ms. Mitchell has effectively conceded that she is a citizen of Utah. The problem is that she has also alleged that "Lundberg & Associates PC, is a Utah law firm based in Salt Lake County . . . ." (Compl. ¶ 8, ECF No. 2 at 3.) Because the Lundberg Defendants are almost certainly Utah citizens, Ms. Mitchell has failed to meet her burden in establishing complete diversity of citizenship. The court therefore lacks original jurisdiction under 28 U.S.C. § 1332(a).

Ms. Mitchell also alleges that this court has federal question jurisdiction over her "constitutional claims arising under the United States Constitution," and "over the claims arising

under the federal Fair Debt Collection Practices Act. (Compl. ¶¶ 14,16 ECF No. 2 at 4.) The court addresses (I) Ms. Mitchell's constitutional claims and then (II) her FDCPA claims.

## I.    Constitutional Claims

Ms. Mitchell argues that this court "has federal question jurisdiction over Mitchell's constitutional claims arising under the United States Constitution, in particular her Section 1983 claims that her federal rights to due process have been denied . . . ." (Compl. ¶ 14, ECF No. 2 at 4.) In her Fifth and Sixth causes of action, Ms. Mitchell argues that she has suffered "denial of due process." (*See* Compl., ECF No. 2 at 20; 26.)

In her Fifth Cause of Action, she alleges that "Judge Shaughnessy failed to provide [her] due process in the Foreclosure Action by failing to properly review the Mitchell I case . . . ." (Compl. ¶ 107, ECF No. 2 at 20.) And she alleges that "[t]he Court of Appeals in Mitchell I failed to address the jurisdictional challenge raised by Mitchell, and thereby denied Mitchell her due process rights to have her arguments heard." (Compl. ¶ 128, ECF No. 2 at 25.) ECF No. 2 at 25.) Ms. Mitchell alleges that she "is entitled to an award of damages under Section 1983 for the violation of her federal due process rights at the insistence of [the Bank of New York Mellon] and the Lundberg Defendants . . . ." (Compl. ¶ 135, ECF No. 2 at 26.)

In her Sixth Cause of Action, Ms. Mitchell again argues that Judge Shaughnessy denied her "her rights to due process" by improperly holding, "at the urging and misrepresentations of BYNM and the Lundberg Defendants, that res judicata barred Mitchell from defending herself . . . ." (Compl. ¶¶ 141, 143 ECF No. 2 at 27.) Like her Fifth Cause of Action, she appears to bring the Sixth Cause of Action under Section 1983. (*See* Compl. ¶ 160, ECF No. 2 at 31 ("Mitchell was damaged by the denial of her due process rights and is entitled under Section 1983 to recover those damages in the amount of the attorney fees she incurred in opposing the

Foreclosure Action when Judge Shaughnessy proceeded on the flawed assumptions urged by BNYM and the Lundberg Defendants . . . .").)

"A § 1983 claim requires a plaintiff to show both the existence of a federally-protected right and the deprivation of that right by a person acting under color of state law." *Wittner v. Banner Health*, 720 F.3d 770, 773 (10th Cir. 2013). "Here, the Rule 12(b)(6) dispute center[s] on whether" the Defendants are state actors who can "be held liable for a constitutional violation, assuming there [is] one, under § 1983." *Id.*

In its Motion to Dismiss, the Bank of New York Mellon argues that it "is not a state actor and cannot be liable under § 1983." (ECF No. 27 at 10.) Similarly, the Lundberg Defendants argue that Ms. Mitchell's Complaint "fails to allege facts relevant to the Lundberg Defendants necessary to establish [that] they are state actors." (ECF No. 24 at 8.) In response to the Bank, Ms. Mitchell argues that the Bank "forgets about the concept of 'joint participation' where private entities can be treated as state actors when they join with the state in denying due process." (ECF No. 33 at 17.) Ms. Mitchell invites the court to infer that the private Defendants' conduct constitutes "state action" through the "concept" of "joint participation."

"Where a litigant seeks to hold a private actor accountable as a state actor for constitutional deprivations, [the Tenth Circuit] "appli[es] various analyses," one of which is the "joint action test." *Wittner*, 720 F.3d at 775. Because Ms. Mitchell relies exclusively on the joint action text, the court "confine[s] [its] analysis to this issue." *See Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000). Under the joint action test, the Tenth Circuit asks "whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Wittner*, 720 F.3d at 777. "Most decisions discussing this concept hold that if there is a substantial degree of cooperative action between state and private

officials, or if there is 'overt and significant state participation' in carrying out the deprivation of the plaintiff's constitutional rights, state action is present." *Johnson v. Rodrigues*, 293 F.3d 1196, 1205 (10th Cir. 2002) (citation omitted). "This was not present here." *Id.*

Here, Ms. Mitchell has "not alleged that any state officials conspired with or acted jointly in making the decision[s]" to rule against her in her state court proceedings. *See Wittner*, 720 F.3d at 777. Instead, her argument appears to be that the Defendants misled state judges into issuing adverse rulings against her. "In taking as true those facts pled to support these allegations and in drawing all reasonable inferences therefrom as required under Rule 12(b)(6)," the court "finds that there are no facts in the instant complaint which tend to show that" the defendants "had an understanding or agreed plan with" the state judges "to cause harm or injury to" Plaintiff. *See Crabtree By & Through Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990). "Accordingly, the 'joint action' test is not satisfied on the facts alleged here." *Wittner*, 720 F.3d at 777. The court holds that Ms. Mitchell has not sufficiently pleaded joint action between the judges who ruled against her and the Defendants named in her Complaint to satisfy the element of state action. The court therefore dismisses Ms. Mitchell's Fifth and Sixth causes of actions under Rule 12(b)(6).

FDCPA

In her twelfth cause of action, Ms. Mitchell argues that she "has been damaged by" the Bank of New York Mellon's and the Lundberg Defendants' "violations of the" Fair Debt Collection Practices Act. (*See* Compl. ¶ 215, ECF No. 2 at 40.) "To establish a violation of the FDCPA, Plaintiff must prove four elements." *Young v. NPAS, Inc.*, 361 F. Supp. 3d 1171, 1183 (D. Utah 2019) (citation omitted). First, that Plaintiff is a "consumer;" second, that "the debt arises out of a transaction entered primarily for personal, family, or household purposes;" third

that the defendant "collecting the debt is a 'debt collector' within the meaning of 15 U.S.C. § 1692a(6);" and fourth, that the defendant "violated, by act or omission, a provision of the FDCPA." *Id.* (citation omitted).

Both Defendants argue that they are not a "debt collector" under the FDCPA. (*See* ECF No. 10 at 22 (Ms. Mitchell "does not allege facts demonstrating the Lundberg Defendants collected a debt from her or were acting [as] a debt collector within the meaning of the FDCPA when representing the Bank of New York Mellon in the 2016 Judicial Foreclosure Action."; *see also* ECF No. 27 at 10 ("Ms. Mitchell has pleaded no facts from which the Court could infer that [the Bank] has ever engaged in debt collection activity at all . . . .").) The Supreme Court recently left open the question of whether one who judicially enforces mortgages is a "debt collector" under 15 U.S.C. § 1692a(6). *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1039 (2019) ("And whether those who judicially enforce mortgages fall within the scope of the primary definition is a question we can leave for another day."). That question similarly appears to be unresolved in the Tenth Circuit. *See Obduskey v. Wells Fargo*, 879 F.3d 1216, 1221 (10th Cir.) ("While judicial mortgage foreclosures may be covered under the FDCPA because of the underlying deficiency judgment . . . a non-judicial foreclosure proceeding is not covered . . . ."). As explained below, the court need not determine whether the Defendants may properly be considered "debt collectors" under the FDCPA because Ms. Mitchell's FDCPA claims fail on other grounds.

Ms. Mitchell alleges that both the Bank and the Lundberg Defendants violated three provisions of the FDCPA. First, Ms. Mitchell alleges that "[n]either [the Bank] nor the Lundberg Defendants gave the required notice under Section 1692g when they made their first communication in an attempt to collect the Mitchell Debt through the Foreclosure Action."

(Compl. ¶ 212, ECF No. 2 at 40.) Second, she alleges that both Defendants "made knowing misrepresentations to the [state] Court as to the status of Mitchell I regarding res judicata and finality in order to obtain the judicial sale on February 13, 2018, which is a violation of Section 1692e." (Compl. ¶ 213, ECF No. 2 at 40.) Third, she alleges that both Defendants "have taken or threatened to take unlawful means to repossess the Property from Mitchell in violation of Section 1692f(6) by obtaining the void foreclosure sale." (Compl. ¶ 214, ECF No. 2 at 40.) The court dismisses all three of these alleged violations under Rule 12(b)(6).

 15 U.S.C. § 1692g

15 U.S.C. § 1692g provides that "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing" certain information.

The Lundberg Defendants argue that Ms. Mitchell's claim under § 1692g is "barred by the applicable statute of limitations . . . ." (ECF No. 10 at 23.) "The statute of limitations for FDCPA claims is one year." *Allen v. Bank of Am., N.A.*, No. 11 C 9259, 2012 WL 5412654, at *4 (N.D. Ill. Nov. 6, 2012) (citing 15 U.S.C. § 1692k(d)).[3] The Lundberg Defendants argue that "the 2016 Judicial Foreclosure Action was filed in April 2016," "[t]herefore, Plaintiff was required to assert her FDCPA violation by April 2017 at the latest." (ECF No. 10 at 23.) But neither the "filing of the foreclosure suit," nor "its litigation of that claim to judgment" constitutes "an **initial communication** within the meaning of § 1692g(a)." *Allen*, 2012 WL 5412654 at *4 (bold added). In order to correctly calculate the limitations period, this court must know the date the "initial communication" was sent. *See id*. Because the Lundberg Defendants

---

[3] 15 U.S.C. § 1692k(d) provides that "[a]n action to enforce any liability created by this subchapter may be brought . . . within one year from the date on which the violation occurs."

incorrectly identify the date of the "initial communication," their affirmative statute of limitation defense fails. As explained below, their failure to correctly identify the correct initial document may have been justified.

In her Complaint, Ms. Mitchell entirely fails to identify *any* document that constitutes an "initial communication" under § 1692g(a). Ms. Mitchell simply states that neither the Bank "nor the Lundberg Defendants gave the required notice under Section 1692g when they made their first communication in an attempt to collect the Mitchell Debt through the Foreclosure Action." (Compl. ¶ 212, ECF No. 2 at 40.) This conclusory statement fails to identify the specific document that constitutes the Defendants' "first communication."

In *Cohen*, the Second Circuit "affirm[ed] the district court's dismissal of" the plaintiff's "§ 1692g claim for failure to state a claim upon which relief can be granted." *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 87 (2d Cir. 2018). In *Cohen*, the plaintiff "contend[ed] that" a Certificate of Merit and a request for judicial intervention "were initial communications as defined by § 1692g(a) and that because the defendants failed to identify the correct creditor in these documents, they are liable for damages under the FDCPA." *Id*. The Second Circuit concluded that the plaintiff's claim "fail[ed] because the documents [the plaintiff] identified as defective initial communications" were "not initial communications as defined by the FDCPA." *Id*. at 88.

Here, Ms. Mitchell has not identified any specific document as the "initial communication" under the FDCPA. The protections afforded by § 1692g(a) only apply if Ms. Mitchell received an "initial communication." Ms. Mitchell has pleaded no facts demonstrating that she received a document constituting an "initial communication." Her claim under § 1692g(a) against both defendants fails. The court dismisses this claim under Rule 12(b)(6).

<u>15 U.S.C. § 1692e</u>

15 U.S.C. § 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." As noted above, Ms. Mitchell alleges that both Defendants "made knowing misrepresentations to the [state] Court as to the status of Mitchell I regarding res judicata and finality in order to obtain the judicial sale on February 13, 2018, which is a violation of Section 1692e." (Compl. ¶ 213, ECF No. 2 at 40.) Ms. Mitchell argues that "[t]he judicial foreclosure sale is void because [the bank] committed a fraud on the court when through its counsel, it made numerous false representations to the state court in order to convince Judge Shaughnessy that the issues being raised by Mitchell in her defense and in her counterclaim were barred by *res judicata* when in fact they were not . . . ." (Compl. ¶ 80, ECF No. 2 at 16.).

Ms. Mitchell's theory under 15 U.S.C. § 1692e is that the Defendants made misrepresentations to the state court—not to her—in the collection of a debt. The court assumes without deciding that "section 1692e 'should be read to prohibit any deceptive representation if it is made during the process of debt collection *without regard for the identity of the audience*.'" *Chung v. Lamb*, No. 14-CV-3244-WYD-KLM, 2016 WL 1028320, at *3 (D. Colo. Mar. 15, 2016) (emphasis in original) (quoting *Schendzielos v. Silverman*, 139 F. Supp. 3d 1239, 1244 (D. Colo. 2015)).

"District courts are split as to whether Rule 9(b) should apply to claims alleging deceptive means to collect debts . . . ." *Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assocs., P.C.*, 114 F. Supp. 3d 1342, 1371 (N.D. Ga. 2015). "The court need not decide this issue because regardless of whether the heightened pleadings standards of Rule 9(b) or the more liberal standards of Rule 8 apply to plaintiff's claims, the court finds that plaintiff's . . .

conclusory allegations are insufficient to state a claim under the FDCPA." *Pak v. Unifund CCR Partners*, No. 7:13-CV-70-BR, 2014 WL 238543, at *6 (E.D.N.C. Jan. 22, 2014). "Allegations that are purely conclusory are not entitled to an assumption of truth." *Wellons, Inc. v. Eagle Valley Clean Energy, LLC*, No. 15-CV-01252-RBJ, 2015 WL 7450420, at *1 (D. Colo. Nov. 24, 2015). Ms. Mitchell simply alleges that the Bank "and the Lundberg Defendants made knowing misrepresentations to the [state] Court as to the status of Mitchell I regarding res judicata and finality in order to obtain the judicial sale on February 13, 2018, which is a violation of Section 1692e." (Compl. ¶ 213, ECF No. 2 at 40.) This is conclusory. The court dismisses Ms. Mitchell's 15 U.S.C. § 1692e claim under Rule 12(b)(6).

15 U.S.C. § 1692f(6)

As noted above, Ms. Mitchell alleges that both Defendants "have taken or threatened to take unlawful means to repossess the Property from Mitchell in violation of Section 1692f(6) by obtaining the void foreclosure sale." (Compl. ¶ 214, ECF No. 2 at 40.) 15 U.S.C. § 1692f provides that "[t]aking or threatening to take any **nonjudicial** action to effect dispossession or disablement of property" "is a violation" if:

> **(A)** there is no present right to possession of the property claimed as collateral through an enforceable security interest;
>
> **(B)** there is no present intention to take possession of the property; or
>
> **(C)** the property is exempt by law from such dispossession or disablement.

15 U.S.C. § 1692f(A–C) (bold added).

As the Supreme Court recently explained, "[e]very State provides some form of *judicial* foreclosure: a legal action initiated by a creditor in which a court supervises sale of the property and distribution of the proceeds." *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1034 (2019) (emphasis in original). And "[a]bout half the States also provide for what is known as

*nonjudicial* foreclosure, where notice to the parties and sale of the property occur outside court supervision." *Id.* (emphasis in original). By its plain terms, section 1692f(6) "prohibits a 'debt collector' from '[t]aking or threatening to take any **nonjudicial** action to effect dispossession or disablement of property . . . .'" *Id.* (quoting 15 U.S.C. § 1692f (bold added)). Ms. Mitchell alleges that the Defendants violated 15 U.S.C. § 1692f by "obtaining [a] void foreclosure sale." (Compl. ¶ 214, ECF No. 2 at 40.) Throughout the Complaint, Ms. Mitchell alleges that the foreclosure sale at issue was a judicial foreclosure sale, not a non-judicial foreclosure sale. (*See e.g.,* Compl. ¶ 9, ECF No. 2 at 3 ("Defendants Lundberg, DeHaan, and McCormack are individuals employed by Lundberg & Associates, who are the attorneys representing BNYM in the **judicial foreclosure** collection action pursuing the Debt against Mitchell, who are debt collectors as defined in the FDCPA,* and have been attempting to collect the Mitchell Debt through the **judicial** Foreclosure Action.") (bold added).) Ms. Mitchell's claim under section 1692f(6) fails because she has alleged that the Defendants obtained a judicial foreclosure—not a nonjudicial foreclosure. The court dismisses Ms. Mitchell's 1692f(6) claim under rule 12(b)(6).

## Supplemental Jurisdiction

Under 28 U.S.C. § 1367(c), a federal court may decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction." The court declines to exercise supplemental jurisdiction over Ms. Mitchell's remaining state-law claims.

## NuVenture's Crossclaim

On May 29, 2019, NuVenture Group LLC filed an Answer and Crossclaim against the Bank of New York Mellon. (*See* ECF No. 40 at 9.) In this Crossclaim, NuVenture alleged that "[t]he Court has diversity jurisdiction over the cross claim . . . against" the Bank since the Bank "is not a citizen of Utah . . ." (ECF No. 40 at 10.) NuVenture further alleged that it "is a Utah

LLC . . ."

It is well established that "[t]he party invoking federal jurisdiction bears the burden of establishing such jurisdiction as a threshold matter." *Radil v. Sanborn W. Camps, Inc.,* 384 F.3d 1220, 1224 (10th Cir.2004). "In general, for jurisdictional citizenship, there are two types of business organizations: corporations and unincorporated associations." *Grynberg v. Kinder Morgan Energy Partners, L.P.*, 805 F.3d 901, 905 (10th Cir. 2015). "Utah law defines a limited liability company as an unincorporated business entity." *Simpson Holdings, L.C. v. Buchanan*, No. 1:18-CV-86 TS-PMW, 2018 WL 5924407, at *2 (D. Utah Nov. 13, 2018) (citation omitted). "As an unincorporated business entity," NuVenture's "citizenship is determined by the citizenship of each of its members." *Id*; *see also Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1234 (10th Cir. 2015) ("Like every other circuit to consider this question, this court concludes an LLC, as an unincorporated association, takes the citizenship of all its members.").

In order to meet its burden of establishing diversity jurisdiction, NuVenture was required to affirmatively plead the citizenship and identity of each of its members. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 108 n.36 (3d Cir. 2015) ("where the unincorporated association is the proponent of diversity jurisdiction, there is no reason to excuse it of its obligation to plead the citizenship of each of its members."). Here, NuVenture has not identified its members. Nor has it identified their citizenships. The court dismisses NuVenture's Crossclaim without prejudice for failure to adequately plead diversity citizenship.

## Remaining Counterclaim

The Bank argues that if this court "rules it lacks jurisdiction over Ms. Mitchell's claims, then it may sever" the Bank's counterclaim and third-party complaint under Rule 21. (ECF No.

28 at 2.) The Bank argues that "[o]nce these claims are severed, it will have diversity jurisdiction under 28 U.S.C. § 1332 because Ms. Mitchell" is a citizen of Utah, and the Bank is not a citizen of Utah. (ECF No. 28 at 2.)

As an initial matter, the court is not persuaded that severing the Bank's counterclaim under Rule 21 is necessary for this court to retain jurisdiction over the Bank's claims. "The requisites of Federal diversity jurisdiction for the counterclaim were properly pled." *Nat'l Research Bureau, Inc. v. Bartholomew*, 482 F.2d 386, 388 (3d Cir. 1973). "Thus the counterclaim" is supported "by allegations of independent jurisdiction." *Id*. Normally, where "jurisdiction is independent, the counterclaim must be allowed to proceed without regard to the fate of the original claim . . . ." *Id*. at 389; *see also Amoco Prod. Co. v. United States*, 852 F.2d 1574, 1579 (10th Cir. 1988) ("The fact that the . . . action was brought as a counterclaim is immaterial because the independent jurisdiction allows the district court to adjudicate the counterclaim despite the dismissal of the original complaint."). Here, however, the court "think[s] that in this case the *Colorado River* doctrine wisely counsels" this court's "abstention from duplicative interference with the exceptionally protracted state proceedings present here." *D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1226 (10th Cir. 2013).

"As a general rule, the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id*. at 1233 (citations omitted) (internal quotation marks omitted). "But, at times, reasons of wise judicial administration must weigh in favor of permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding." *Id*. (citation omitted) (internal quotation marks omitted). The "*Colorado River* doctrine applies where" a court must decide whether to stay or dismiss "a federal suit pending the resolution of a parallel state court proceeding." *Id*. (citation

omitted) (internal quotation marks omitted). "[D]eclining to exercise jurisdiction based on the *Colorado River* doctrine is appropriate only in 'exceptional' circumstances." *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994). "The Supreme Court has set forth a number of factors for a court to consider in determining whether 'exceptional circumstances' exist." *Id*. "Before examining these factors, however, a federal court must first determine whether the state and federal proceedings are parallel." *Id*.

"Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Fox*, 16 F.3d at 1081. In making this determination, the court looks at the state case as it actually exists; it does not consider how the state proceedings could have been brought in theory. *See id*.

In its September 14, 2018, Complaint filed in state court, the Bank of New York Mellon brings two causes of action against Paula Mitchell, Wade Mitchell, and John Doe Occupants for unlawful detainer and ejectment.[4] In its May 3, 2019, counterclaim and third-party complaint, the Bank brings a cause of action against Paula Mitchell for unlawful detainer, and causes of action for ejectment and trespass against Paula Mitchell and unknown defendants residing in Utah. (*See* ECF No. 34 at 26–27.) "Proceedings may be parallel even if they 'are far from identical.'" *CNSP, Inc. v. City of Santa Fe*, 753 F. App'x 584, 590 (10th Cir. 2018) (quoting *Osguthorpe*, 705 F.3d at 1233). "Based on the circumstances showing that substantially the same parties are litigating substantially the same issues in both the federal and state cases," the court determines "that the state and federal proceedings are parallel." *Id*. at 589–90.

---

[4] The Bank's Complaint is publicly available on the Utah State Court's Xchange website. The case number is 180906841 The Complaint is found at Docket Entry 1.

Having determined that the state and federal proceedings are parallel, the court must now "determine whether deference to state court proceedings is appropriate under the particular circumstances." *Fox*, 16 F.3d at 1082.

"In *Colorado River,* the Supreme Court set forth a nonexclusive list of factors for courts to consider in deciding whether 'exceptional circumstances' exist to warrant deference to parallel state proceedings: (1) whether either court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the courts obtained jurisdiction." *Fox v. Maulding*, 16 F.3d 1079, 1082 (10th Cir. 1994). "The Court also advised that "no one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required.'" *Osguthorpe*, 705 F.3d at 1234.

The first factor weighs in favor of this court declining jurisdiction. As articulated by the Tenth Circuit in *Fox*, the first factor is "whether either court has assumed jurisdiction over property." *Fox*, 16 F.3d at 1082. A court assumes jurisdiction over property when an in rem or quasi in rem action is filed with that court. *See Shaffer v. Heitner*, 433 U.S. 186, 199, 97 S. Ct. 2569, 2577, 53 L. Ed. 2d 683 (1977) ("If jurisdiction is based on the court's power over property within its territory, the action is called 'in rem' or 'quasi in rem.'"). "Without serious question, a proceeding to foreclose upon a mortgage . . . is an action in rem or quasi in rem, under Utah law. *1st Nat. Credit Corp. v. Von Hake*, 511 F. Supp. 634, 639 (D. Utah 1981) (citing *Boucofski v. Jacobsen*, 36 Utah 165, 104 P. 117, 122 (1909)); *see also Blue Creek Land & Live Stock Co. v. Kehrer*, 60 Utah 62, 206 P. 287, 289 (1922) ("this court in numerous decisions heretofore rendered in cases involving the foreclosure of mortgages has held that under the Utah statute

relating to foreclosure the proceeding is essentially an action in rem."). On April 15, 2016, the

Bank of New York Mellon, through the Lundberg Defendants, brought a foreclosure suit against

Ms. Mitchell in the Third Judicial District Court, Salt Lake Department, Salt Like County, State

of Utah. (ECF No. 27-11 at 10.) The state court therefore "assumed jurisdiction" over the

property at issue as early as that date. Because the state court assumed jurisdiction over the

property at issue, the first factor weighs in favor of this court declining jurisdiction.[5]

As in *Osguthorpe*, the second factor does not weigh in favor of the court declining

jurisdiction. "But the latter two factors weigh heavily on" this court's analysis. *Osguthorpe*, 705

F.3d at 1234. "The 'paramount' consideration in *Colorado River* was the third factor: 'the danger

of piecemeal litigation.'" *Id.* (citation omitted). As noted above, on January 18, 2011, Ms.

Mitchell filed a Complaint in the Third Judicial District Court, County of Salt Lake, State of

Utah, seeking, among other things, for the state court to declare that the Bank of New York

Mellon "lack[s] any interest in the subject property which might permit them to foreclose, or

attempt to foreclose the property through non-judicial means, and that their activities are void *ab

initio* . . . ." (ECF No. 27-1 at 28.) From that time until August 14, 2018, when Ms. Mitchell filed

her suit in federal court, "the parties aggressively litigated this sprawling case in state court."

---

[5] The court has considered whether the doctrine of prior exclusive jurisdiction applies. The court recognizes that a "federal court's jurisdiction is qualified by the ancient and oft-repeated rule—often called the doctrine of **prior exclusive jurisdiction**—that when a state or federal court of competent jurisdiction has obtained possession, custody, or control of particular property, that authority and power over the property may not be disturbed by any other court." § 3631 In Rem and Quasi-in-Rem Actions, 13F Fed. Prac. & Proc. Juris. § 3631 (3d ed.) (bold added). But the prior exclusive jurisdiction doctrine only applies if "the proceedings in **both** the state and federal courts . . . are determined to be **in rem** as to the same property . . . ." *See 1st Nat. Credit Corp. v. Von Hake*, 511 F. Supp. 634, 639 (D. Utah 1981) (bold added); *see also Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 466, 59 S. Ct. 275, 280, 83 L. Ed. 285 (1939) ("On the other hand, if the **two suits** are in rem, or quasi in rem . . . the jurisdiction of the one court must yield to that of the other." (bold added)). Here, the state court proceeding is in rem because it involves a foreclosure action. In this court's view, in order for the prior exclusive jurisdiction doctrine to apply to the Bank's counterclaims, one of those claims would have to constitute an in rem proceeding under Utah law. The three claims are for unlawful detainer, ejectment, and trespass. The court has not discovered any case from the Utah Supreme Court specifically holding that these claims constitute in rem or quasi in rem claims. Because the court ultimately dismisses the Bank's counterclaims under the *Colorado River* doctrine, it declines to predict whether the Utah Supreme Court would hold that unlawful detainer, ejectment, or trespass are actions in rem.

*Osguthorpe*, 705 F.3d at 1234. Ms. Mitchell's 2011 suit has over four hundred entries. The Bank's 2016 suit has nearly three hundred entries. The Bank's 2018 suit already has seventy entries. As noted above, there is an ongoing appeal in the Utah Court of Appeals. And, as discussed, the Bank already filed an action in state court for unlawful detainer and ejectment. The litigation surrounding the property at issue has "become profoundly intertwined with the machinery of the Utah judicial system." *Osguthorpe*, 705 F.3d at 1235. The third factor weighs heavily in favor of this court declining jurisdiction.

The fourth factor is the order in which the courts obtained jurisdiction. As noted above, Ms. Mitchell filed her action in state court in 2011. The Bank filed its foreclosure action in 2016. The Bank filed its Complaint for ejectment and unlawful detainer in state court in September of 2018—long before it filed its third party complaint and counterclaim on May 3, 2019, with this court. The fourth factor weighs heavily in favor of this court declining jurisdiction.

For the foregoing reasons, the court dismisses the Bank's Counterclaim under the *Colorado River* doctrine.

<u>Conclusion</u>

For the reasons stated, the court GRANTS the Defendants' Motions (ECF Nos. 10 & 27) to Dismiss Ms. Mitchell's federal claims. The court dismisses without prejudice NuVenture's Crossclaim for failure to adequately plead diversity jurisdiction. This MOOTS NuVenture's Motion, (ECF No. 41). As discussed above, the court dismisses the Bank's Counterclaim under the *Colorado River* doctrine. This MOOTS Ms. Mitchell's Motion to Dismiss, (ECF No. 29).

SO ORDERED this 6th day of June, 2019.

BY THE COURT:

_____
Clark Waddoups
United States District Court Judge